IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID RASHEED ALI | § | |
| v. | § | CIVIL ACTION NO. 6:10cv454 |
| DWAYNE DEWBERRY, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff David Ali, proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act complaining of alleged violations of his right to religious freedom. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

In his complaint and at an evidentiary hearing, Ali stated that he is a Muslim, and as such cannot directly or indirectly handle pork. He stated that when he was assigned to the food service unit, he was assigned to serve pork, and so he filed a grievance; the food service manager said that "he would see," and from that point on, Ali did not have to handle pork on days when that meat was served, but was assigned to something else, such as serving vegetables. However, the food service manager told him that in order to have the policies officially changed, he would have to contact the chaplaincy department.

Ali filed grievances with the chaplain, and his job was changed from the food service department to the packing plant. There, he had to work as an industrial truck operator, meaning that he had to wrap boxes of pork in plastic and then move them with a forklift. Ali testified that this amounted to "indirect" handling of pork, which was also prohibited, as was assisting other people

1

in eating pork. When he refused to work, he received disciplinary action. After this, he went to work in the packing plant.

The defendants Warden Dewberry and case manager Brenda Bailey were ordered to answer the lawsuit and have filed a motion for summary judgment. This motion stated that Ali's medical and classification restrictions prevented him from being assigned to any jobs other than food service or the packing plant. With regard to Ali's assignment to the packing plant, the Defendants stated that Ali did not show that simply handling boxes and plastic wrap, without touching the pork itself, amounted to a "substantial burden" on his religious beliefs. In addition, they argued that the policies involved furthered compelling governmental interests and did so by the least restrictive means. The Defendants also stated that Ali had not set out a viable retaliation claim and that they are entitled to qualified immunity.

Ali also filed a motion for summary judgment, contending that his claim involved the fact that the TDCJ policies considered a number of factors in assigning jobs, but failed to consider the inmate's religious preferences. He argued that the courts cannot evaluate religious truths and that his sincerely held religious beliefs prevent him from handling pork either directly or indirectly, or from assisting other persons in consuming, selling, purchasing, or dealing with pigs or pork meat. Ali said that requiring him to work in the packing plant imposed a substantial burden on his religious faith by forcing him to choose between following his beliefs or suffering disciplinary action. He again said that the prison did not have a compelling interest in forcing him to choose between his beliefs and receiving disciplinary action. He claimed that he is eligible to work in a number of different areas and could have been assigned to the inside medical squad, the laundry department, the library, the commissary, the maintenance department, or the metal shop.

Ali averred that the fact that the defendants admitted that he was moved from the food service department to the packing plant is itself proof of retaliation. He acknowledged the defendants' assertion that they believed that they were making a reasonable accommodation for him, given that 21 other Muslim inmates worked in the packing plant, was inaccurate, because the

question did not concern the other inmates' views on handling pork but rather his. He stated that the defendants were not entitled to qualified immunity because the defendants knew or should have known that their actions violated the First Amendment as well as RLUIPA. Ali said that he sought nominal and punitive damages, as well as declaratory and injunctive relief.

After review of the pleadings and the summary judgment evidence, the Magistrate Judge issued a Report recommending that the defendants' motion for summary judgment be granted and that the lawsuit be dismissed. With regard to Ali's First Amendment claim, the Magistrate Judge cited O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), a case in which prison work requirements which caused Muslim inmates to miss Friday Jumu'ah prayers were upheld by the Supreme Court. In discussing the Religious Land Use and Institutionalized Persons Act claims, the Magistrate Judge cited Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004), a case in which the Fifth Circuit held that a prison requirement that an outside volunteer be present to conduct services for a religious group called Yahweh's Evangelical Assembly did not place a substantial burden on the religious exercise of the members of the group.

The Magistrate Judge also cited Kahey v. Jones, 836 F.2d 948 (5th Cir. 1988). Although this case pre-dates RLUIPA, as the Magistrate Judge acknowledged, the Fifth Circuit held there that specific, particularized dietary requests, unique to the plaintiff alone and not even shared by other Muslims, did not have to be accommodated. The Magistrate Judge observed that Ali was restricted from assignment to jobs other than food service or the packing plant, and said that the evidence showed that when Ali complained about his assignment to food service, he was moved to the packing plant, where 21 other Muslims worked without apparent difficulty. Nothing in Ali's grievances indicated that he could not work in the packing plant, where he would not be required to cook, serve, or touch pork. The Magistrate Judge was unable to locate any case law referring to Muslim inmates being required to "indirectly" handle pork by wrapping and lifting boxes containing it, and concluded that the summary judgment evidence showed that Ali's job assignment was done in furtherance of a compelling state interest and was the least restrictive means of doing so.

3

In addressing Ali's retaliation claim, the Magistrate Judge again observed that 21 other Muslims worked at the packing plant without apparent complaint. Although Ali argued that this was irrelevant because his beliefs differed from theirs, the Magistrate Judge stated that this fact tended to refute any inference that the defendants assigned Ali to the packing plant because they knew that it would be offensive to him; on the contrary, the evidence showed that Ali was assigned to the packing plant because it was one of only two jobs to which he could be assigned and he had complained about his assignment to the other one.

With regard to the disciplinary case which Ali received, the Magistrate Judge stated that Ali had failed to show that he was deprived of any constitutionally protected liberty interest, as set out in Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). Finally, the Magistrate Judge concluded that the defendants were entitled to equitable relief and that Ali had not shown any entitlement to equitable relief.

In his objections to the Report of the Magistrate Judge, Ali says that his proposed relief does not change the prison "status quo" of having other inmates cook, serve, or handle pork, or work in the packing plant. He says that the argument that if an exception is made for him, an exception must be made for everyone is without merit because RLUIPA and the Texas Religious Freedom Act operate by mandating consideration of exceptions to rules of general applicability. He says that there is no "compelling interest" in failing to consider his religious preference before assigning jobs.

Ali argues that the grievances which he filed should have made clear that he was not seeking a transfer out of the food service department and that, more importantly, these grievances made clear that requiring him to handle pork, even indirectly, violated his religious beliefs. He maintains that he is eligible to work in the laundry department, the commissary, the law library, the general library, the maintenance department, and the field squad, and complains that the defendants have not disclosed the names of the "21 Muslims" whom he says work in the packing plant.

Ali again states that he is asserting his own religious beliefs and not those of someone else, saying that the prison officials somehow should have known that putting him to work in the packing

plant violated his religious beliefs. He cites Hope v. Pelzer, 536 U.S. 730 (2002), a case involving the handcuffing of an inmate to a hitching post, to say that although this specific practice was not held to be unconstitutional, the practice of handcuffing inmates to fences is unconstitutional, and there is no reason to draw a distinction. Similarly, he says, even if requiring inmates to work in a packing plant handling boxes has not held to be unconstitutional, the practice of requiring Muslims to serve pork has been, and so the defendants should not be entitled to qualified immunity. He again says that his grievances placed the defendants on notice that assignment to the packing plant would violate his religious scruples. Finally, Ali states that he is entitled to declaratory relief, and that all named defendants participated in or approved of the job change and so should be held liable in this case.

Ali's objections are without merit. Nothing in the grievances which he filed, which are set out in full by the Magistrate Judge, would place a reasonable prison official on notice that Ali had religious objections to working in the packing plant. His bare assertion that he is eligible to work in other jobs, unsupported by any other evidence in the record is not sufficient to create a genuine issue of material fact. While it is true that Ali's sworn pleadings and testimony are summary judgment evidence, the Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007). In Mosley v. White, slip op. no. 09-41091 (5th Cir., December 13, 2010), the Fifth Circuit stated as follows:

> In response to White's motion for summary judgment, as previously explained, Mosley provided the district court with his affidavit and those of his co-inmates and his grievance reports. Although we recognize that the affidavits and reports constitute valid summary judgment evidence, Fed. R. Civ. P. 56(c)(4), we have explained that without more, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden" and defeat a motion for summary judgment. Douglass v. United Services. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Although Ali argues that his particularized beliefs regarding the "indirect" handling of pork require special accommodation, the Magistrate Judge correctly rejected this contention. Kahey, 836 F.3d at 950; *see also* Baranowski v. Hart, 486 F.3d 112, 122 (5th Cit. 2007). As the Fifth Circuit

5

has explained, such accommodation of particularized demands could "spawn a cottage industry of litigation and have a negative impact on prison, staff, inmates, and prison resources." Baranowski, 486 F.3d at 122, *citing* Freeman v. Texas Department of Criminal Justice, 369 F.3d 854, 862 (5th Cir. 2004).

Ali's claims regarding qualified immunity fail for the same reason. The Supreme Court has explained that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right; this is not to say that an official action is protected by qualified immunity unless the very action has been held unlawful, but that in the light of pre-existing law, the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003). In other words, qualified immunity can be overcome as long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

In Hope v. Pelzer, cited by Ali, the prisoner was handcuffed to a hitching post on two occasions, once for two hours and once for seven hours; during this seven hour duration, he received water only once or twice, was allowed no restroom breaks, and remained shirtless while the sun burned his skin. Although the defendants claimed that they were entitled to qualified immunity, the Supreme Court pointed to prior circuit prohibiting the chaining of inmates to fences and prohibiting the use of physical abuse directed at prisoners after they had terminated their resistance to authority, as well as the fact that a report from the U.S. Department of Justice warned state officials that the practice was "without penological justification." In addition, the Supreme Court stated that "the obvious inherent cruelty in this practice should have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment." Hope, 536 U.S. at 745.

The present case is a far cry from the situation in Hope. While plain and obvious similarities exist between chaining a prisoner to a hitching post and chaining him to a fence, it would not necessarily be obvious to a reasonable prison official that religious objections to serving pork in the

6

food service department would preclude a prisoner from handling plastic wrap and boxes which happened to contain pork. Ali has not shown that the contours of the right not to work in a packing plant handling such boxes were sufficiently clear as to place the prison officials on notice that they were violating this right. Finally, Ali has not shown that he is entitled to damages or to equitable relief.

The Court has conducted a careful *de novo* review of the pleadings, testimony, and evidence in this cause, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and that the Report of the Magistrate Judge (docket no. 10) is hereby ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendants' motion for summary judgment (docket no. 37) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this cause, specifically including but not limited to the Plaintiff's motion for summary judgment, are hereby DENIED.

**SIGNED this 17th day of May, 2011.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE