IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID RASHEED ALI | § | |
| v. | § | CIVIL ACTION NO. 6:10cv454 |
| DWAYNE DEWBERRY, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND DENYING MOTION FOR RELIEF FROM JUDGMENT

The Plaintiff David Ali, proceeding *pro se*, filed this lawsuit complaining of violations of his right to religious freedom under the First Amendment and the Religious Land Use and Institutionalized Persons Act. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Ali says that when he arrived at the Michael Unit in November of 2009, he was assigned to work in the food service department. He was required to handle pork, which violated his Muslim beliefs. When Ali complained, the food service manager, Richardson, said "we would see," and from that time on, he was no longer required to handle pork, but would be assigned to another task such as serving vegetables. Richardson told Ali that he would have to file a grievance in order to get the policies changed.

Ali did file a grievance, and after he did so, his job was changed from the kitchen to the packing plant. This is where the pigs are killed, the meat is processed, and then put into boxes and wrapped. Ali was assigned to work as an industrial truck operator, meaning that he had to wrap boxes of pork in plastic and put it in the freezer or on the truck for transport to other units. Ali concedes that he does not do any slaughtering or even touch the pork, but simply wrapped boxes containing pork in plastic and moved them with a forklift.

1

Nonetheless, Ali asserted that these tasks are also religiously offensive to him, arguing that his beliefs require that he "not help other people eat pork." He stated that under Muslim doctrine, expressed to him in a letter he received from a Muslim theological organization, it is not permissible to work in a piggery or to handle pork even if enclosed in boxes, tins, or any other type of container.

After review of the pleadings, the Court dismissed the defendants Susan Bauer, C. Lawson, Jody Hefner, Eboni Brown, and an unknown individual identified as the person who had changed his job assignment to the packing plant. The defendants Dwayne Dewberry and Elizabeth Bailey were ordered to answer the lawsuit. After the answer was filed, both the Plaintiff and the Defendants filed motions for summary judgment. The Court reviewed the pleadings and the summary judgment evidence and granted the Defendants' motion, dismissing the lawsuit on May 17, 2011.

On June 1, 2011, Ali filed a motion for relief from judgment. In his motion, Ali argued first that if the infringement on an inmate's right is "extreme," officials are not shielded by qualified immunity even if there is no factually similar case. Ali complained of the fact that TDCJ policies did not take inmates' religious preferences into account when making job assignment, and asserts that he was not allowed to pursue discovery relevant to his retaliation claim.

Ali went on to argue that the district court should have ignored the Fifth Circuit's decision in Kahey v. Jones, 836 F.2d 948 (5th Cir. 1988), which rejected the notion that individualized treatment tailored to a single person's specific religious views is necessarily required. He concluded by arguing that contrary to evidence provided by the Defendants, the food service department and the packing plant were not the only two jobs to which Ali could be assigned.

On July 27, 2011, the Magistrate Judge issued a Report recommending that Ali's motion for relief from judgment be denied. The Magistrate Judge stated that whether or not it was correct that qualified immunity did not apply to "extreme" circumstances, Ali had not shown that such circumstances existed in this case. No case, in any federal court, has held that it violates the rights of Muslims to work in a packing plant wrapping boxes which happen to contain pork, or otherwise to handle pork in such an indirect way. Although Ali cites Franklin v. Banks, 979 F.2d 1330 (8th

Cir. 1992), that case involved an inmate in a field squad who complained he occasionally had to handle "manure and dead animals." There was testimony supporting the district court's finding that the religious prohibition against handling swine was honored by the field supervisor and that Franklin had not shown an absolute religious prohibition against handling bones or manure. This is obviously far different from the circumstance in the present case; while Ali points to the statement in Franklin that the prohibition against handling swine was honored by the field supervisor, he fails to correlate this to his job in the packing plant, in which he never actually touched pork or the flesh of swine. Furthermore, as the Court observed, a reasonable prison official would have no reason to believe that working in the packing plant was offensive to Muslims in that a number of other Muslims already worked there with no apparent difficulties.

With regard to Ali's discovery claim, the Magistrate Judge noted that Ali did not seek a Rule 56(f) continuance. Ali had speculated that discovery could show that there were not other Muslims assigned to the packing plant or that if there were, they were not "practicing Sunni Muslims," or if they were, that possibly some of them had previously objected to the job assignment. The Magistrate Judge stated that under Fifth Circuit precedent, litigants could not rely on vague assertions that discovery would produce needed but unspecified facts.

Ali again contended that the Court should "ignore" the Fifth Circuit's decision in Kahey, saying that the Supreme Court had rejected Kahey's holding in Cutter v. Wilkinson, 544 U.S. 709 (2005). In fact, the Magistrate Judge said, Cutter was a facial challenge to the constitutionality of RLUIPA and not a challenge to how that law was applied in any particular case. Nor did Gonzalez v. O Centro Espirita Beneficiente Uniao Do Vegetal, 546 U.S. 418 (2006), in which the Supreme Court rejected the theory that the Controlled Substances Act represented a "compelling state interest" which did not allow for any exceptions, affect the validity of the holding in Kahey.[1]

---

[1] The Magistrate Judge noted in the original Report of April 21, 2011, that Kahey pre-dates RLUIPA, but stated that the reasoning of that case was "in some ways instructive."

Finally, Ali argued that the kitchen and the packing plant were not the only two jobs to which he could be assigned, pointing to an affidavit from an inmate named Kenneth Carrillo. This affidavit affirmed that Carrillo was not assigned to safekeeping status but worked in the laundry, and that there are other non-safekeeping inmates in the laundry who are not assigned to safekeeping status. The Defendants had offered summary judgment evidence showing that "positions in the laundry are limited, as *most* offenders assigned there are safekeeping status." The Magistrate Judge noted that the fact that Carrillo works in the laundry and is not in safekeeping status does not contradict the statement that "most" inmates who work there are in safekeeping.

More pertinently, the Magistrate Judge said, monetary damages are not available under RLUIPA and Ali's claims for injunctive relief are rendered moot by his move out of the packing plant. The Magistrate Judge pointed to Jackson v. Raemisch, 726 F.Supp.2d 991, 998 (W.D.Wisc. 2010), in which an inmate's claim that kitchen work violated his rights under RLUIPA because he could not say his daily prayers was rendered moot by his transfer out of the kitchen, and so because equitable remedies had been mooted and monetary damages were not available, the RLUIPA claim was dismissed. The Magistrate Judge thus recommended that Ali's motion for relief from judgment be denied.

Ali filed objections to the Magistrate Judge's Report on August 23, 2011. In his objections, Ali says first that he should not be required to incur costs of litigation, including the filing fee for the lawsuit, because the Defendants could have resolved the claim through the grievance procedure. This objection is without merit.

Second, Ali objects to the Magistrate Judge's statement that "Ali did file grievances with the chaplain, but then discovered that his job had been changed from the kitchen to the packing plant." He says that he filed a Step One grievance, which was denied on February 17, 2010, and then filed a Step Two grievance on March 3, 2010; his job was changed on March 5, 2010. The Magistrate Judge simply compressed and summarized the chronology. This objection is without merit.

Third, Ali says that he did not file his grievance because he did not get a job change to the inside medical squad, but rather that his grievance was due to the lack of TDCJ policy regarding his religious objection to the handling of pork. This is again a dispute over the wording of the Magistrate Judge's summary of the facts of the case, not any substantive recommendations. This objection is without merit.

Fourth, Ali complains that the Magistrate Judge erroneously concluded that the summary judgment evidence showed that he was eligible to work at two jobs, these being the kitchen and the packing plant. Ali states that he averred under penalty of perjury that he was eligible for more than two jobs, and that there was no evidence offered to the contrary. In fact, however, the affidavit from Mark Sandlin, Chief of Classification at the Michael Unit, states that "Ali's medical work restrictions, along with his prior disciplinary records are the factors that limit him to a job assignment in the packing plant or the food service industry." Ali points to nothing beyond his own unsupported assertion that he is eligible for other jobs. His objection on this ground is without merit.

Next, Ali asserts that the prison officials must offer evidence to show that this case is similar to the Supreme Court's decision in O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). In that case, as the Magistrate Judge explained, Muslim prisoners were assigned to an outside work detail which prevented them from attending Friday Jumu'ah services. The Supreme Court held that the requirement that certain prisoners work outside of the facility was justified by concerns of institutional security and order and that the policy prohibiting inmates from returning during the day was justified by those same concerns. The Supreme Court rejected the alternative means of accommodation proposed by the inmates and reaffirmed its refusal to substitute its judgment for that of prison administrators. In the present case, the Court concluded based on O'Lone that the requirement for Ali to work is reasonably related to legitimate penological interests and thus withstood a First Amendment challenge. Ali has offered nothing to show that O'Lone offers no guidance in the present case or that the Court otherwise erred by looking to O'Lone as precedent for a First Amendment religious freedom claim. This objection is without merit.

Sixth, Ali again asserts that the Defendants have not put forth summary judgment evidence to show that he was ineligible for other jobs, saying that he has furnished a "tracking roster" showing that other inmates with the same custodial status or medical classification as Ali are in fact assigned to other jobs. As noted above, Sandlin's affidavit attests that Ali is not eligible for other jobs because of his medical and disciplinary history, and Ali fails to refute or even acknowledge this. His objection on this point is without merit.

In his seventh and eighth objections, Ali complains of the Magistrate Judge's conclusion that no case, in any federal jurisdiction, addressed claims by Muslims concerning the indirect handling of pork. He points to the testimony of Chaplain Brown at the evidentiary hearing, where Brown said that "there's a lot of different Muslim beliefs, we try to go down the center. There are radicals that probably believe a whole lot stricter in some areas than others, but within our TDC policy with Muslims, it is not against our policy for them to work in areas where there is pork." Based on this testimony, Ali contends that "the TDCJ officials knew or should have known that Ali's religion prohibited the indirect handling of pork." He fails to show how this testimony demonstrates that TDCJ officials knew that Ali's religious faith prohibited the handling of boxes containing pork, or the "assisting of others in consuming pork." These objections are without merit.

In his ninth objection, Ali complains of the Magistrate Judge's conclusion that the prison officials had tried to accommodate him by moving him out of the kitchen when he filed a grievance complaining of working there. He states first that he had testified at the evidentiary hearing that an accommodation had already been made for him in the kitchen, and so changing his job was unnecessary; he contends that he filed his grievance asking that the accommodation given to him be adopted as policy.

The Step One grievance which Ali filed, no. 2010078872, says nothing about a long-term accommodation being made for him by the kitchen staff. Instead, it says that on January 10, 2010, Ali was ordered by Officer Ford to serve pork. He told Ford that on December 22, 2009, he had talked to the food service manager, Ms. Kelly, and she told him to notify the on-duty kitchen officer

6

about his inability to serve pork, and that he would have to serve the vegetable and bean items, to which he agreed. On January 10, however, Ford told him that she did not care about his religious beliefs, and failed to assign another inmate to serve the pork even though there were other officers working in the kitchen at that time. It is not clear from this grievance whether the food service manager intended to or in fact gave Ali a permanent exemption from serving pork.

In his Step Two appeal of this grievance, Ali complains about the response to the Step One grievance, which said that he did not have to handle the pork, but only the utensil containing the pork. He says that this response is inappropriate because he is using the utensil to place the pork on a food tray. Ali states that he is not complaining about being assigned to food service, and asks that the "existing status quo," in which he is assigned to serve the vegetables while another inmate is assigned to serve the pork, be made policy in order to prevent future problems. By the time the grievance was received, however, on March 5, 2010, Ali had already been reassigned to the packing plant, and so the Step Two grievance response said that no further action was necessary.

Ali does specifically reference the accommodation he received, calling it the "existing status quo," in his Step Two grievance, but it was not clear from his Step One grievance that his religious views were being accommodated, or that he wanted to remain in the Food Service Department and have this asserted accommodation made into policy. Instead, this grievance complained that on January 10, 2010, Ali was required to serve pork by Officer Ford. After he filed this grievance, Ali was transferred out of the food service department to a job which would not require the direct handling or serving of pork. Ali's objection on this point is without merit.

In this same objection, Ali again asserts that he was eligible to work in other jobs and that the Defendants have not offered evidence that other Muslims worked in the packing plant by listing the names and numbers of those inmates. As stated by the Magistrate Judge, the summary judgment evidence showed that Ali's medical and disciplinary history rendered him ineligible for any jobs other than food service and the packing plant, and Ali himself conceded at the evidentiary hearing that other Muslims worked in the plant, although he said that he thought the number was "maybe

four" rather than the 21 which the Defendants claimed. As the Magistrate Judge said, once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence, the plaintiff cannot meet his burden by conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Ali's assertions that he is eligible for other jobs and that no "practicing Sunni Muslims" worked at the packing plant amount to nothing more than conclusory allegations and unsubstantiated assertions. His objection on this point is without merit.

Tenth, Ali objects to the Magistrate Judge's conclusion that there was no clearly established right not to handle boxes containing pork and that Ali had not shown that no reasonable official could have thought it propr to assign him to the packing plant. He refers back to his earlier argument maintaining that the prison officials knew or should have known that they were imposing a substantial burden on his religious beliefs by requiring him to wrap boxes containing pork. As explained above, Ali has offered nothing to show that a reasonable prison official would have known that assigning him to the packing plant would impose a substantial burden on his religious beliefs. This objection is without merit.

Eleventh, Ali complains of the Magistrate Judge's conclusion that consideration for Ali's religious beliefs was shown by his transfer to the packing plant after Ali filed a grievance complaining about the food service department. He says in this objection that the accommodation in the kitchen was made *after* the grievance was filed, and that the response to the Step One grievance was "contradictory to the actual accommodation that the food service department made." This objection fails to refute the Magistrate Judge's conclusion that Ali was moved out of the food service department because he complained about working there. Ali's objection on this point is without merit.

Twelfth, Ali complains of the Magistrate Judge's statement that particularized accommodations for individual religious belies are not constitutionally required and that it was "easy to see the chaos which would ensue" if such a rule were applied across the prison system. He says

that the defendants "have not explained why his alternative policy would not be feasible," but overlooks the fact that the summary judgment evidence shows that Ali's "alternative policy" - assignment to another job - is not feasible because he is ineligible for jobs outside of food service and the packing plant because of his medical and disciplinary history. In addition, as the Magistrate Judge said, Ali is no longer assigned to the packing plant and so his claim in this regard is moot. Ali's objection on this point is without merit.

Next. Ali challenges the Magistrate Judge's conclusion that the Religious Land Use and Institutionalized Persons Act does not create a cause of action against the defendants in their individual capacities. He points to Sossamon v. Texas, 131 S.Ct. 1651 (2011) as saying that when it comes to an award of monetary damages, sovereign immunity places the Government on an entirely different footing from private parties. Based on this, Ali argues that RLUIPA creates a cause of action "against defendants in their individual capacities who act outside of their scope of authority." The Supreme Court's decision in Sossamon was concerned with the issue of states' immunity, and concluded that RLUIPA did not constitute a waiver of the states' sovereign immunity against claims for monetary damages. The decision did not disturb the conclusion of the Fifth Circuit that RLUIPA did not create individual-capacity actions. *See* Sossamon v. Texas, 560 F.3d 216, 327-29 (5th Cir. 2009). Ali's objection on this point is without merit.

In his fourteenth objection, Ali again objects to the Magistrate Judge's conclusion that no precedents exist concerning the indirect handling of pork. Ali says that although the cases which he cited, except for Franklin, concern the direct handling of pork in the food service context, he believes that had the inmates in those cases been placed in a position of having to wrap boxes containing and then transport those boxes, those inmates would have had religious objections just like he does. Whether or not this is actually the case, Ali's speculation as to what other inmates might have done is not sufficient to show that a reasonable prison official would have believed that assigning Ali to work in the packing plant would impose a significant burden upon the exercise of his religious rights. Ali's claim on this point is without merit.

Fifteenth, Ali objects to the Magistrate Judge's statement that he did not show a constitutionally protected activity as a basis for the alleged retaliation, nor that but for the retaliatory motive, the actions complained of would not have occurred. He says that the "constitutionally protected activity" was his exercise of rights under the First Amendment and RLUIPA, and his right to file grievances. He points out that the Defendants admitted that they changed his job after he filed his grievance, stating that had he not filed the grievance, he would not have been moved to the packing plant.

While Ali may be correct that his arguing for his religious rights is a constitutionally protected activity, his objection is nonetheless without merit because he has failed to show that but for a retaliatory motive, the actions complained of would not have occurred. He argues in his objections that he exercised his right to file a grievance on March 3, 2010, and that after he exercised these rights, his job assignment was changed. However, Ali has failed to show a retaliatory motive; the grievance which he filed complained about his assignment to the food service department, and so in response to this grievance, Ali was transferred out of the department, away from the job assignment about which he had complained. Ali has not shown a retaliatory motive in the fact that he was removed from a job assignment about which he had complained. This objection is without merit.

Next, Ali says that because he is not an attorney, the Court should have *sua sponte* granted him a continuance in order to provide him an opportunity to conduct discovery. He says that he was not allowed to conduct discovery because the Court granted protective orders. However, the Court made the scope of discovery clear in the order to answer as well as the granting of the protective orders, and stated that the protective orders did not affect the Defendants' obligation to produce all documents relevant to the claims or defenses of any party. Although Ali complains that the Court granted protective orders for the Defendants, he fails to mention that the Court also granted a motion which he filed seeking production of documents. Ali fails to offer any justification for a *sua sponte* continuance. This objection is without merit.

In his seventeenth objection, Ali complains of the Magistrate Judge's statement that the Supreme Court's decision in Cutter did not overturn the Fifth Circuit's decision in Kahey because Cutter was a general challenge to the constitutionality of RLUIPA and not a challenge to its application in a case. He points to language in Cutter saying that if inmate requests for accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of the institution, then the facility would be free to resist, and "in that event, adjudication in as-applied challenges would be in order." Cutter, 125 S.Ct. at 2125.

In Cutter, the prison administrators in the State of Ohio mounted a facial challenge to the constitutionality of RLUIPA, arguing that the portion of the law which applies to institutionalized persons violated the Establishment Clause of the First Amendment. The Sixth Circuit agreed with this contention, but the Supreme Court reversed. *See* Cutter v. Wilkinson, 349 F.3d 257 (6th Cir. 2003), *rev'd* 125 S.Ct. 2113 (2005). The decisions of the Sixth Circuit and the Supreme Court both made clear that the challenge was a facial one; the language cited by Ali simply underscores the fact that the Cutter decision itself was not an as-applied challenge. Consequently, Ali's contention that Cutter overruled Kahey or otherwise called that decision into question is without merit.

Finally, Ali once again argues that he could be assigned to jobs other than food service or the packing plant, noting that the Magistrate Judge stated that "most" inmates assigned to the laundry are in safekeeping. He says that there is "no summary judgment evidence" showing that he is ineligible to work in the laundry or other departments, but fails to allude to the portion in Sandlin's affidavit saying that Ali's medical and disciplinary history renders him ineligible for any jobs other than food service or the packing plant. This objection is without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the Plaintiff's motion for relief from judgment, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 56) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Plaintiff's motion for relief from judgment (docket no. 51) be and hereby is DENIED.

**SIGNED this 16th day of September, 2011.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE